Will the attorneys who are going to argue the case please approach the podium. Identify yourselves and the party you represent. And in court, how much time you would like to argue your position. Good afternoon, Your Honors. My name is Michael Gomez, here representing Mr. Andrew Slabon. I would like to argue, for the opening argument, ten minutes and reserve three minutes for rebuttal. Very well. Good afternoon, Assistant State's Attorney Janet Mahoney on behalf of the people of the state of Illinois, and I expect my argument to be about ten minutes also. I'm sorry? I expect it to be about ten minutes also. Very Good afternoon, Your Honors, counsel, and may it please the court. My name is Michael Gomez from the Office of the State Appellate Defender, and I'm here on behalf of my client, Mr. Andrew Slabon. For today's argument, I will primarily focus on the first issue in the briefs. On January 27th, 2014, Mr. Slabon's nightmare came true. He got home, where he lived with his mother, and he found her dead in their living room. For anyone, this would be a traumatic event. But for Mr. Slabon, it was even worse. He was extremely intoxicated, which understandably exacerbated the trauma of those events. His blood alcohol level was .244, three times the legal limit. But at his trial, he was denied the opportunity to present a complete picture of all the facts that would have allowed the jury to properly determine if he had formed the requisite mental state to be found guilty of aggravated battery. He was denied his constitutional right to present that defense because the court and the state operated under a fundamental misapprehension of the law. Now, in 1961, the legislature put forth voluntary intoxication as an affirmative defense, and in 2002, removed voluntary intoxication only as an affirmative defense. Senator Hawkinson, on March 20th, 2001, stated very clearly in the legislative debates on this bill, he said, I also want to make a point for legislative intent. He goes on to say, nothing in this legislation would in any way affect the ability to introduce any evidence, including evidence of voluntary intoxication, which might go to negate the required mental state for any individual criminal offense. So he stated clearly, for the purposes of legislative intent, that voluntary intoxication still remained a factor that could negate a mental state. Does that have any import if we're talking about general intent crimes? Your Honor, voluntary intoxication is available only for specific intent crimes. The reason for that being that if it were a defense for general intent crime, it would operate as an excuse for criminal conduct, which it is not. The legislature admittedly in 2002 said it is no longer an excuse for criminal conduct. Someone should not be absolved of criminal liability just because they were voluntarily intoxicated. So does this come down to whether aggravated battery is a specific intent or general intent crime? Is that your position? At its essence, yes, Your Honor. But in this particular case, Mr. Stavron has denied his opportunity to present that defense. In this case where he was charged with a specific intent crime. But the state takes the position that it's a general intent crime. Yes, the state has argued that it's a general intent crime. And Illinois law has been unclear. Cases have come down on both sides of that issue. Well, what was his defense? That he didn't know what he was doing because he was intoxicated? Yes, Mr. Stavron's defense, the one that he wanted to present, was that he was so extremely intoxicated, .244, three times the legal limit. The jury heard it, right? The jury did hear it. The jury also received an instruction from the judge saying that voluntary intoxication was not a defense to this crime and was repeatedly told throughout trial that they were to disregard any mention or any reference of intoxication. So even though the jury heard it, the jury presumed to follow instructions, ignored that evidence. So his defense would have been that he was so extremely intoxicated, exacerbated by the fact that he was under severe emotional distress from finding his mother dead in their living room that day. He was disoriented. He was suicidal to the point where he was not consciously aware of his surroundings or the circumstances. He was involuntarily taken to the hospital. He was restrained to a bed where there were multiple people, not just Ms. Lauren Benjamin or Dr. Berg, also security guards in there. But he knew he was in the hospital, right? At times he did say he did understand that he was at the hospital. At other times he didn't. Again, this was an individual who was extremely intoxicated and under severe emotional distress. These are factors that do bear on the question of whether he was consciously aware of his surroundings and the circumstances necessary to obtain a conviction for aggravated battery. An aggravated battery in this instance, not only does the battery portion require a knowingly making contact of an insulting or provoking nature, but the other factor that makes it aggravated battery is that the defendant had to have known that the victim was a nurse while performing her duties. Is that proven circumstantially? Yes, Your Honor. A defendant's mental state is proven circumstantially. The only indication that he didn't know that Ms. Benjamin was a nurse was him saying she never introduced herself. Mr. Stapone said he didn't know whether she had introduced herself. Again, he was saying he said during his direct examination that he was in and out of, I don't want to say consciousness, but awareness of his surroundings that entire day. But again, these were factors that the jury did not consider. These were arguments that Mr. Stapone could not make. And that's all that we're asking for. All that Mr. Stapone is asking for is the opportunity to present a defense that the court and the state worked to preclude him from presenting based on a fundamental misapprehension of the law. What more could he have introduced? Point 224, I believe he testified that he had been drinking for a number of years, that his mother had died, that he was upset, that he was injected with some sedatives, if you will. He admitted to his conversations and outbursts with the woman in the hospital who had the needle injecting him with the sedatives, the doctor. I mean, what else would he like to introduce and preclude him from introducing? Well, I think it's important to remember the context in which this evidence came out. This evidence was not introduced as evidence that the jury could consider. Every time Mr. Stapone attempted to introduce this evidence, he was shut down by the court, either through sustaining the state's objection to that evidence or the court's sua sponte, sustaining any or precluding any evidence or testimony regarding the intoxication. But what more would he have wanted to introduce, I guess? And I understand he was pro se, and he didn't make an offer of proof, and, you know, the record may be void of any additional. What are you saying that he would have wanted to tell the jury that he was precluded from doing it? Well, first of all, Your Honor, in his cross-examination of Dr. Barrick, Mr. Stapone attempted to ask Dr. Barrick what the effects of the chemical restraints that were injected into him would have on someone who was so extremely intoxicated as he was. He was not able to ask those questions or get any answers. Dr. Barrick stated on cross-examination that he had never – that the chemical restraints were meant to sedate an individual, that he had never seen someone get more aggressive after being injected with those drugs. And in this case, according to the state's evidence, Mr. Stapone did become more aggressive. So the question is, what effect could those drugs have had on someone who was so severely intoxicated? Mr. Stapone could have testified to what exactly he drank that day, how he was able to get home, what he remembered from his experience at home when he found his mother, what exactly he remembered if he ever sobered up at any point at the hospital, where he would have become consciously aware of his surroundings and the circumstances and the people involved. Just because we know that Nurse Benjamin had a needle, just because we know that she is a nurse, that does not mean that someone with a 0.244 blood alcohol level who had undergone severe emotional distress would have that same knowledge. And the jury was told that they could not consider that information. They were told that it wasn't a defense. What was wrong with what they were told? Well, the jury was told that voluntary intoxication was not a defense. A voluntary intoxicated condition is not a defense to the charge of aggravated battery. And the entire time throughout trial... What were they told? You can't think about the fact that he was drunk? They were told it's not a defense, which is correct. It's not an affirmative defense, Your Honor. It still remains a factor, a defense theory, that Mr. Slobon could have advanced and should have been able to advance, as the legislature clearly stated, when they removed voluntary intoxication as an affirmative defense, but not as a defense completely. And not as a theory that he could present to the jury that would lead to his acquittal. So you're saying what's wrong with the instruction is that the word affirmative was missing? It should have been, it's not an affirmative defense? What are you saying is wrong with the way the jury was instructed? Well, the jury, and it's also important to remember, Your Honor, that throughout the entire trial, whenever the court would sustain an objection to Mr. Slobon's attempt to introduce any evidence of his intoxication, whenever the court precluded him from presenting any testimony or evidence regarding that issue, the court also said this is completely irrelevant to the defense. During closing arguments, the court told the jury this is not a defense to the crime of aggravated battery. So throughout the entire trial, the jury knew that this was something that he was not able to talk about. Mr. Slobon tried to elicit or introduce this evidence in different ways, but the jury understood. By the time they were instructed, they were given the instruction that voluntary intoxicated condition is not a defense to the crime of aggravated battery, but they were not to consider that issue or that factor at all. And as we know, that is not what the law. Was the jury instructed on the elements of battery and aggravated battery? Yes, Your Honor, the jury was instructed. That included knowingly? Yes, Your Honor. And were they instructed separately on what knowingly means? I do not believe so, Your Honor. From my recollection, I do not believe they were given the definition of knowingly. And although they were given those words, although the jury understood or could have understood what knowingly meant, they were still precluded from considering whether Mr. Slobon's intoxicated condition precluded him or prevented him in some way from performing that requisite mental state in order to be found guilty of aggravated battery. And that's just life. We're just asking for a defense theory and an opportunity for him to present something that is commonly understood. It's that intoxication does impair perception and does impair an individual's awareness of his surroundings. There's a whole series of offenses driving along with the influence that speak to that. So all we're asking is that this Court reverse Mr. Slobon's conviction, remand for a new trial where he is able to exercise his constitutional right to present a theory of defense that would lead to an acquittal. Thank you. Thank you. Good afternoon. Assistant State's Attorney Janet Mahoney on behalf of the people of the State of Illinois. May it please the Court. Counsel. While aggravated battery of a nurse is a general intent crime, the analysis does not hinge on that. It starts with voluntary intoxication is not a defense to any crime in Illinois. And what we need to do is start with the progression of the legislation on this defense as it started in 1963. In 1963, voluntary intoxication was a defense to every crime in Illinois. The statute provided voluntary intoxication was a defense when the intoxicated condition negated the existence of a mental state. In 1988, the legislature amended that and limited voluntary intoxication to specific intent crimes only. Now stating that where the intoxication is so extreme it suspends the power of reasons and renders one incapable of forming specific intent, then it is a defense. However, in 2002, the legislature amended that statute one more time and now provides that it is not a defense in any case. So what is left after 2002? It still can negate a mental state. No, it cannot. Because then you're just resurrecting the 1963 statute which they got rid of. What you can do is point to your conduct and how you were acting. And perhaps you were falling down when this event happened, which would be like if he accidentally ran into this nurse and he would be able to point to, I was falling down, I didn't have my bearings, I couldn't stand up. You can point to conduct, but you cannot use intoxication as the reason for that. And the legislature made it very clear in 2002, and there hasn't been a single case since 2002 that has allowed for voluntary intoxication to negate the mental state. And in fact, in 2006, the 4th District Appellate Court stated in People v. Jackson, voluntary intoxication is no longer recognized as an excuse for criminal behavior, and in that case stated that counsel was not ineffective for failing to pursue that theory. Since that case, the legislature has not responded, has not changed the statute, meaning that Jackson reflects the intent of the legislature. Now, the plain language of the statute is pretty clear. A person in an intoxicated condition is criminally responsible for his conduct. So we need look no further. However, today counsel has asked this court to look at the legislative debates and has pointed to one comment by Senator Hawkinson. So what we need to understand is what prompted this change in the legislation. And it was in 2002, this is per the legislative debates, a case out of Rock Island prior to this legislation, a case where a man went to the neighborhood bar and got extremely drunk. He came home and he got into bed with his 11-year-old daughter's friend who was spending the night and fondled her. He argued successfully at trial that he was in such a drunken stupor that it suspended his power of reason and he was incapable of forming the requisite intent. And the legislature responded to that with several of them saying, we're sick and tired of people getting drunk and asking us to excuse their criminal behavior because they went out and got drunk. The volunteering that starts with their choice to have that drink and they can make that choice. An offender can control his own destiny. He can not drink or not drink to the point where he's committing criminal acts. And we're not going to excuse that anymore. The clear intent was to eliminate, this was a defense, as an attack to any mental state. Whether you call it an affirmative defense or whether you say it's attacking the mental state, the outcome is the exact same. The legislature took it away. What about the high-breadth situation that the defendant presents here that, yes, I intoxicated, however, I was involuntarily sedated and he tried, according to counsel, he tried to get in from the doctor. What's the effect of these sedatives on somebody who's intoxicated? Now, it sounds like this self-represented defendant was trying to say or trying to put before the jury that, yeah, I was drunk, but I also got these sedatives and I didn't know what I was doing. I'm just saying that's a little, that's more involuntary intoxication than it is voluntary once the sedatives are added to the equation. We have a defendant here who chose to represent himself and he has a constitutional right to do that. And once he made that choice, he is held to the same standard as any other person. Answer my question, though. On the involuntary inducing of sedatives into a person who's intoxicated. He did not plead involuntary intoxication as a defense in this case. He is not asking for the involuntary intoxication in this case. He is asking for evidence of voluntary intoxication in this case. We cannot overlook the fact that he was required to plead this as an affirmative defense and give the state an opportunity to respond to it. Because I do believe at one point the doctor stated something to the effect that there would not be this interaction. So we cannot inject here on appeal this concept of involuntary intoxication when it was not pursued in the trial court. This is the very type of case that the legislature in 2002 was fed up with. A defendant trying to escape his legal responsibility for his volitional conduct under the concept of that I was so drunk I didn't know what I was doing and if I wasn't drunk, I certainly wouldn't have done that. And that is not what we have as law here in Illinois. Okay. And so just so I'm clear, because I think it's slightly different than what you argued in your brief where there seemed to be the spike between general intent and product intent. Your position is, look, voluntary intoxication is not going to negate mental state. It's not going to be a defense. It really is irrelevant. And the judge properly kept monishing the defendant not to bring it up. Absolutely. Absolutely. And the state did file a motion to cite additional authority. There was a misstatement in the brief. We had filed that motion immediately upon this being called for oral argument and upon review of it approximately a month ago. I don't know if this court has ruled on that yet or not. And in that motion, we outlined the progression of the change in the statute, the entire legislative debate, not just the one comment, this case of People v. Jackson, showing this is what the legislature wanted. Any debate as to whether this is fair to the defendant or not should be taking place in Springfield. But as of right now, the legislature has spoken. It sounds like the state wants to get a serve rebuttal in her brief. No, it was a motion to cite additional authority. I understand that, but it was more in the nature of, oops, we made the wrong argument. Give us another chance. Well, this is a case of statutory interpretation. It's subject to de novo review. And so regardless of what the state says in the brief, regardless of whether you accept our motion to cite additional authority or not, this court is to apply the proper interpretation of that state statute to be consistent with what the legislature wanted. We want a uniform and consistent body of law. Just because the state made a misstatement in their brief doesn't mean that this court should ignore what the legislature intended. Unless this court has any other questions, the people ask that you affirm the defendant's conviction and sentence. Do you want to briefly address the lesser included, the instruction on the lesser included? Absolutely. So the standard being if there's some evidence, if believed by a jury, we'll reduce that crime to a lesser included offense. And if there is, then the court is obligated to provide that lesser instruction. Here the defendant is claiming he was in such an extremely intoxicated state and under severe emotional distress, he was incapable of always being aware of his surroundings, where he was, with whom he was talking to, and understanding that nurse Benjamin was a nurse. First of all, in keeping with our first argument, we should be taking extreme intoxication off the table. Not available. But even if you do take into consideration the extreme intoxication and his emotional distress, which he clearly was in, no doubt about it, his own testimony showed that he knew exactly where he was and what he was doing. So let's look at the events of the day. The question is, is there a lesser included offense of this charge? Is battery a lesser included offense, an aggravated battery to a nurse? Only if there's some evidence showing that he did not know she was a nurse. It is a lesser included offense. The question you're answering was an instruction required. Correct. But it is to answer. No, you're correct. You are correct. It is a lesser included, but it doesn't mean you automatically get the instruction. We get that. Okay. So are you saying that when a defendant testifies, I didn't know she was a nurse, that's not some evidence that a jury could consider that he didn't know she was a nurse, drunk or not drunk? That's a conclusory statement. That isn't some evidence. So what the evidence would be. It's his testimony. It's just a conclusion. It's actually. But it's his testimony, conclusory or not. I did not know she was a nurse. The jury could say, yes, it did. You're guilty of aggravated battery. Maybe he didn't know because he was .224 and injected with sedatives. Maybe he didn't. Maybe they exercised lenity in finding guilty of battery. Was he entitled to a lesser included offense because some evidence was introduced? It's the people's position that by the defendant stating that he did not know the nurse, that she was a nurse, that is not enough some evidence. And when you have to look at his testimony. What would be some evidence? His testimony as a whole. If he actually didn't know where he was and didn't know who some of the people were in the room and couldn't recall that Officer Cummings was saying certain things and couldn't recall the responses he made to her and couldn't recall that Nurse Benjamin came in the room and couldn't recall that she made comments to him and couldn't recall the specific comments he made back to her. He remembered everything about that day in that room. And when you look at his testimony as a whole, that does not amount to some evidence. It simply does not. But given that you think that it may, this is harmless. Harmless? Harmless. He was convicted of the felony. Perhaps a jury would have convicted him of a misdemeanor. Well, let's look at the standard. Error in jury instructions is harmless if it appears beyond a reasonable doubt that a properly instructed jury would have rendered the same verdict. Well, we know for two reasons that the jury would have rendered the exact same verdict. Number one, the jury in this case was instructed and they had to find that he thought that Nurse Benjamin was a nurse. And they found that beyond a reasonable doubt already. That's number one. Number two, given his testimony, which was wholly incredible, there isn't a jury that would have You're not in a position to argue that with respect to the question of whether there was some evidence that would allow for a lesser included instruction on battery. What did the jury find there? People disagree with you on that. You can argue harmless error in jury instructions. So in this case, a lesser included, right? You're not supposed to engage in those credibility determinations when you're determining whether there's some evidence. However, the harmless To be honest, every case does. Because how else do you look to see if there is some evidence? But more so in the harmless, you weigh the evidence and you look at it in connection with all of the other evidence here. And in addition to defendant being wholly incredible, because he conveniently misremembers all of his poor behavior that day, but remembers, I told them that I had been drinking heavily. I remember the things that they said to me. I remember how they were taunting me and they ganged up on me. But in addition to that, we have three witnesses who stated, Nurse Benjamin went into that room and introduced herself to defendant, I'm your nurse. So with jury instruction error, yes, you do have to look at the evidence. And here, it appears beyond a reasonable doubt that no jury would have found him guilty of battery. And therefore, any error here was harmless. Well, not only when she came in, he allowed her to come into a treatment room. He allowed her to administer, use a syringe to inject him with medicine. He even asked her for more medicine after he began to feel better. He even, there's testimony that he stated that Benjamin was not a professional nurse and he didn't feel like he was among professionals. Exactly. And that testimony also proved that he knew that she was a nurse. So regardless of whether this instruction was given or not, there wasn't going to be a jury that wasn't going to find him guilty of aggravated battery. And for that reason, any error with failing to give an instruction here was harmless beyond a reasonable doubt. Unless there are any other questions, the people ask that you confirm the conviction and sentence.  Mr. Gomez. Regarding the state's argument that voluntary intoxication can no longer be even mentioned at trial, is a gross overstatement of what the legislature intended when they removed the voluntary intoxication as an affirmative defense. In People v. Jackson, the state accurately states, or cites the case, when Jackson said that voluntary intoxication is no longer an excuse for criminal conduct. That's what an affirmative defense is. However, in paragraph 10 of the state's motion to cite additional authority, the state goes the next step and says voluntary intoxication is no longer a defense to any crime. Those two are not the same things. An affirmative defense is very different from a factor that a defendant can introduce at trial as a means of negating. Can you give me an example? Because I don't understand where this line is. Give me an example. Yes, Your Honor. An affirmative defense. Give me an example of where. Well, the very real differences between affirmative defenses and just any factor, like voluntary intoxication or any witness's ability to proceed based on any other circumstance at that time. So for an affirmative defense, it operates as an excuse for criminal conduct. If believed, it exonerates the defendant completely. I understand that. So that's not going to be allowed. When is it going to be allowed, and how is it going to be allowed? In just this way, Your Honor. So because it's not an affirmative defense, the jury does not get a special instruction saying that voluntary intoxication is an excuse for conduct. The jury doesn't get a special instruction at all. It just operates as any other fact, any other relevant fact that bears on an essential element of the offense. Because it's no longer an affirmative defense, the state does not have to disprove it beyond a reasonable doubt. The state doesn't have to assume that burden. It just becomes another point of argument. And that's what a trial is, arguing the facts to see which way and letting the jury decide which way it comes down on the facts. And this, so what the state is arguing essentially, is that it's asking for juries from this point forward never to hear any information regarding a defendant's voluntary intoxication, something that has a very real effect on an individual's ability to perceive. It relieves, essentially relieves the state from its duty to prove essential elements beyond a reasonable doubt. There will be a gap that remains if a defendant is never allowed to mention an extremely important fact that bears on his mental state at the time of alleged criminal conduct. Now, moving to the state's argument on the second issue, the lesser included offense. As many courts have stated, there's no flexibility in determining whether evidence exists or not. And that's all that this issue requires this court to do, determine whether there was evidence supporting the giving of a lesser included instruction. And here, undoubtedly, there was. As Your Honor pointed out, Mr. Stavone did testify to this. And it was also supported by other factors that led credibility. But there is no credibility determination to be made at this point. It's whether there's slight evidence exists and letting the jury make all the determinations and the conclusions that the state made today. That's not the state's position, nor is it the court's position at this time. The jury was the one to make those determinations, and they were prevented from doing it. They did find them guilty of aggravated battery, but they could have very well found in his favor on just a simple battery as opposed to aggravated battery. Is the standard any evidence, or is it some evidence on which a jury could rationally find a lesser included? Yes, Your Honor. There is slight evidence on which that would support the giving. Which a jury could rationally find. Yes. And the state's position is his, I quoted the state now, self-serving statement, I didn't know she was a nurse, in the context of his testimony as a whole, it would not be rational for the jury to believe that. It would be rational given the context of this case, Your Honor. It's self-serving, any statement made by any defendant could always be seen as self-serving. That does not mean that the jury cannot, some rational jury could not find that that statement was true, that he really did not know at the time that she was a nurse. And importantly, Mr. Savold didn't say that she was not a professional nurse. At no point did he ever know that she was a nurse. There were many people in this room. He was involuntarily restrained to his bed. He was injected with chemical restraints. Many other people who were not nurses in the room. The person, according to the state's evidence, whom we happen to kick, was a nurse. It's whether he knew she was a nurse. There was slight evidence indicating that he did not know she was a nurse, as supported by other evidence that had nothing to do with his testimony. But the jury never heard that, and they can never find him guilty of a lesser included offense. And I'd like to make just one brief point with regard to the first issue about the viability of voluntary intoxication as a factor. The state said that there was only one comment that left voluntary intoxication as just a factor in the legislative history. But there were actually many comments. Many comments repeated on page 36. Senator Hawkins had said they were moving voluntary intoxication as an affirmative defense to avoid any jury instruction, or the like of which might suggest to the jury that there's a special defense for intoxication, apart from negating the appropriate mental state. And he goes on to say that they were removing voluntary intoxication as an affirmative defense to remove confusion that intoxication is a separate defense in addition to being a negation of the required mental state. So there were many indications that voluntary intoxication, and the reality of it and its effects on the defendant, can still be introduced to negate a mens rea. For those reasons, we ask that this court to reverse Mr. Sloan's conviction and remand him for a new trial. Thank you. Very well. Thank you. The court would like to thank the parties for briefing on this subject. We'll take a matter under advisement. The court stands in recess.